Matter of Khaychuk (Amazon Logistics, Inc.--Commissioner of Labor) (2022 NY Slip Op 07104)

Matter of Khaychuk (Amazon Logistics, Inc.--Commissioner of Labor)

2022 NY Slip Op 07104

Decided on December 15, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 15, 2022

533138
[*1]In the Matter of the Claim of Alexander Khaychuk, Respondent. Amazon Logistics, Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:November 22, 2022

Before:Lynch, J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Morgan, Lewis & Bockius LLP, New York City (Leni D. Battaglia of counsel), for appellant.
David E. Woodin, Catskill, for Alexander Khaychuk, respondent.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.

Lynch, J.P.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed December 1, 2020, which ruled, among other things, that Amazon Logistics, Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Amazon Logistics, Inc. (hereinafter ALI) is a subsidiary of Amazon.com (hereinafter Amazon) and it operates a digital platform and smartphone app, known as Amazon Flex, that schedules couriers, known as delivery partners (hereinafter DP), to pick up and deliver packages and/or food orders for customers of Amazon. Claimant was engaged by ALI as a DP and applied for unemployment insurance benefits after his engagement ended. The Unemployment Insurance Appeal Board, reversing a decision by an Administrative Law Judge (hereinafter ALJ), determined that an employment relationship existed between claimant and ALI and that ALI was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated. ALI appeals.[FN1]
We affirm. "Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the Board, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Quesada [Columbus Mgt. Sys., Inc.-Commissioner of Labor], 198 AD3d 1036, 1036 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136 [2020]). "Substantial evidence is a minimal standard requiring less than a preponderance of the evidence. As such, if the evidence reasonably supports the Board's choice, we may not interpose our judgment to reach a contrary conclusion" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 136-137 [internal quotation marks, brackets and citations omitted]; accord Matter of Sow [NY Minute Messenger, Inc.-Commissioner of Labor], 201 AD3d 1064, 1065 [3d Dept 2022]). "Traditionally, the Board considers a number of factors in determining whether a worker is an employee or an independent contractor, examining all aspects of the arrangement. But the touchstone of the analysis is whether the employer exercised control over the results produced by the worker or the means used to achieve the results" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 137 [internal quotation marks, brackets and citations omitted]; see Matter of Relay Express Inc. [Commissioner of Labor], 204 AD3d 1265, 1266 [3d Dept 2022]).
The record reflects that claimant applied for the job as a DP using Amazon Flex and was retained after a check of his criminal background and driving record, together with proof of a valid driver's license and proper insurance, and after he signed a written agreement. DPs are required to install [*2]the Amazon Flex app on their smartphone and can perform services using their vehicle, a bicycle or by foot.[FN2] ALI provides DPs with instructions on how to use the app and the app includes a global positioning system that provides ALI with information as to the DPs' location, movements and speed at which they are travelling. DPs may choose to work delivering packages to customers that ordered items directly from Amazon, picking up and delivering food to customers who order from restaurant clients of Amazon or picking up and delivering packages ordered from local third-party vendor clients of Amazon. ALI requires DPs to perform all of these tasks in shifts, broken into blocks of time of generally two or four hours, depending on what type of Amazon customer they choose to serve. Using the app, DPs may choose the type of service they want to perform, as well as when and where they want to work each day, by selecting one or more of the blocks posted by ALI on the app for the date they want to work. ALI sets the fee that will be paid for each block, which is listed on the app at the time the DPs select the block. DPs can select these blocks up to seven days in advance. Once selected, DPs can choose to withdraw from working any block up to 45 minutes prior to the block start time without any consequences. ALI will then repost the block on the app. If a DP repeatedly cancels blocks within the 45-minute window, however, ALI may terminate him or her. DPs are not required to work any blocks, but if they do not select a block for 180 consecutive days, their account could be terminated, although they could apply to reenroll. DPs can work for other delivery services, but not when they were working a block for ALI.
Once DPs select the type of service and the blocks they are interested in, ALI provides them with the location they should report to at the start time of the block. If the DP has chosen to deliver to customers that ordered from Amazon, he or she will be directed to report to the Amazon station located in the area they have chosen to work.[FN3] Using an algorithm, ALI calculates both the amount of deliveries to assign to each block based upon the location and the length of time of the block.[FN4] If a given block is not selected by a DP, ALI increases the fee assigned to that block until it is selected. DPs must deliver all assigned deliveries within the selected block of time. They are also required to follow the delivery instructions in the app, or reasonable instructions from the customer, and are expected to use insulated bags when delivering food orders, not to leave chilled or frozen items unattended, check customer identification when delivering alcohol and collect signatures when instructed to do so in the app. DPs are required to indicate on the app when they pick up a package and when they deliver it. DPs can choose the route that they take to make the deliveries, although ALI provides a suggested route on the app. DPs provide their own vehicles, which [*3]must satisfy certain specification requirements set by ALI. DPs are not paid benefits or for any expenses. ALI finds the replacement for a DP who cancels after selecting a block and pays the DPs for their deliveries even if Amazon does not collect payment from their clients or customers. ALI handles customer complaints, although sometimes it thereafter connects the customer with the DP to resolve the issue. In our view, by providing the customers, assigning the deliveries, limiting the time frame for the deliveries and unilaterally setting the fees paid to the DPs, ALI exercised sufficient control over significant aspects of claimant's work in order to establish an employment relationship, despite evidence in the record that could support a contrary conclusion (see Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 137-140; Matter of Rivera [State Line Delivery Serv.-Roberts], 69 NY2d 679, 682 [1986], cert denied 481 US 1049 [1987]).
Although ALI also contends that claimant is ineligible for unemployment benefits because his contract was terminated for misconduct, this issue was not before the Board and, therefore, it is not properly before this Court (see Matter of Gill [Phoenix Energy Mgt. Inc.-Commissioner of Labor], 145 AD3d 1141, 1142 [3d Dept 2016], lv denied 29 NY3d 904 [2017]). We also decline to reverse the Board's decision based on the ALJ's denial of ALI's request to subpoena claimant's tax returns and proof that he had worked for other employers while engaged as a DP. It is undisputed that claimant could provide services to others, including Amazon's competitors, and "the fact that claimant considered [himself] an independent contractor for tax purposes and deducted expenses on [his] tax returns as if [he] was self-employed is not dispositive" (Matter of Magdylan [Munschauer-Commissioner of Labor], 172 AD3d 1832, 1834 [3d Dept 2019]).
Clark, Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the decisions are affirmed, without costs.

Footnotes

Footnote 1: Although the Board subsequently granted reopening on the December 1, 2020 decisions and, upon reconsideration, adhered to its prior decisions, it does not appear that notices of appeal were filed; therefore, these decisions upon reopening will not be considered.

Footnote 2: Claimant provided services in the New York City area using a vehicle.

Footnote 3: If the DP chooses to work for a local business client, he or she would report to the client's address. If the DP chooses to work for the restaurant clients, he or she would be instructed to report to a location centrally located among those clients in the area the DP chose to work and wait there until an order was placed.

Footnote 4: When working for the restaurant clients, the DPs must provide their location to ALI to receive orders and they will get paid the set fee for the block, even if the restaurants do not receive any orders during that time period.